Kara H. North (13564)
MOXIE LAW GROUP
2100 W. Pleasant Grove Blvd, Ste 450B
Pleasant Grove, UT 84062
Tel.: 801-599-0691
Fax: 801-401-7368
kara@moxielawgroup.com
Counsel for Plaintiff(s)

---

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **ADRIAN "CHIP" GARRITTY, on behalf of himself and others similarly situated**<br><br>Plaintiffs,<br><br>v.<br><br>**PROJECT NEPTUNE, LLC;**<br>**d/b/a CRUISEBUILDER,**<br>**d/b/a VACATIONBUILDER,**<br>**d/b/a LATTER DAY TRAVEL,**<br>**d/b/a JUNGLE REEF;**<br>**WES COBOS, INDIVIDUALLY;**<br><br>Defendants. | Case No. _____<br><br>**CLASS ACTION** |

## CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Adrian "Chip" Garritty, on behalf of himself and all others similarly situated ("Plaintiffs" or "Plaintiff and the Class"), and for their Class Action Complaint against Defendants hereby states and alleges:

## INTRODUCTION

1.      This lawsuit surrounds Project Neptune, LLC's and its owners' individual liability regarding the failed "Glenn Beck Cruise Thru History" (hereinafter "Cruise" or "Cruise Thru History"). Touted as an opportunity to reinforce the passengers' faith, culture, and values, the cruise never sailed, was canceled, and left over 2,000 would-be passengers with millions of dollars in losses. Indeed, individual Class members paid tens of thousands of dollars for their tickets, but none of them received a cash refund.

## PARTIES

2.      Plaintiff Adrian "Chip" Garritty ("Garritty" or "Plaintiff") is an Arkansas citizen and resident of Benton County, Arkansas.

3.      Defendant Project Neptune, LLC, d/b/a CruiseBuilder, d/b/a VacationBuilder, d/b/a Latter Day Travel, d/b/a Jungle Reef (hereinafter "CruiseBuilder") is a Utah citizen. Its registered agent for service of process is Anderson Hinkins LLC located at 881 Baxter Drive, South Jordan, Utah 84095.

4.      Upon information and belief, Defendant Wes Cobos is a citizen of Utah. Cobos is/was President and an owner of CruiseBuilder and was heavily involved in the planning, advertisement, and cancelation of the Cruise Thru History. Wes Cobos remains the Governing Person for Project Neptune, LLC and is located at 4700 West Daybreak Parkway, Suite 150, South Jordan, Utah 84009.

## JURISDICTION AND VENUE

5.      The Court has subject matter jurisdiction over these claims because the parties are completely diverse and the amount in controversy exceeds $75,000.00. 28

U.S.C. § 1332(a)(1) (2000).  Further, under the Class Action Fairness Act of 2005, there are over 100 class members and the amount in controversy exceeds $5,000,000.00. 28 U.S.C. §§ 1332, 1441, 1446, 1453, & 1711.

6.      The Court has personal jurisdiction over CruiseBuilder because CruiseBuilder is incorporated in Utah and has conducted business within Utah for years and derives or derived substantial revenue in this District. Further, its wrongs alleged in this action were conducted within this District.

7.      The Court has personal jurisdiction over Wes Cobos because, upon information and belief, he is domiciled in Utah and his wrongdoings alleged herein occurred in Utah.

8.      Venue is likewise proper in this District. 28 U.S.C. § 1391 (2000).

### STATUTE OF LIMITATIONS

9.      The claims herein accrued, at the earliest, on September 21, 2021.

10.     This action was originally filed in Benton County, Arkansas on October 27, 2023. Case No. 04CV-23-2996. Therefore, it was filed within 2 years, one month, and 6 days from accrual, or 766 days. The case was removed to the Western District of Arkansas on December 5, 2023. Case No. 2:23-cv-05225-TLB.

11.     On September 27, 2024, United States District Judge Timothy L. Brooks dismissed the action without prejudice due to lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).

12.     Plaintiff and the Class have diligently pursued their rights, and equity demands the statute of limitations be tolled during the prior litigation.

13.     The statute of limitations clock began accruing again, at the earliest, on September 27, 2024. Therefore, the time to refile this action on a three-year statute of limitations ends 329 days after Judge Brooks' order. Or in other words, August 22, 2025, at the earliest.

## FACTUAL ALLEGATIONS

14.     Project Neptune, LLC d/b/a CruiseBuilder launched in 2017. It specialized in international cruise-based travel featuring itineraries and excursions not typically offered by other travel companies, including travel featuring speakers and entertainers of interest to its targeted consumers.

15.     Beginning in 2019, CruiseBuilder partnered with Glenn Beck, Blaze Media, LLC ("Blaze Media"), Carnival Corporation & plc ("Carnival Corporation"), and Costa Cruise Lines Inc. ("Costa Cruise Lines") to create the "Glenn Beck Cruise Thru History."

16.     The Cruise was a charter, meaning the entire ship, the Costa Luminosa, was rented by CruiseBuilder for the benefit of Plaintiff and the Class, and was scheduled to depart on March 24, 2020.

17.     Carnival Corporation and Costa Cruise Lines sold the charter to CruiseBuilder. **Exhibit 1.**

18.     The Costa Luminosa has a guest capacity of 2,260 and is "pure, unmistakable Carnival[.]" **Exhibit 2.**

19.     Carnival Corporation & plc is the parent company of Costa Cruise Lines Inc. Both are incorporated in and registered to do business in the United States. **Exhibit 3 & Exhibit 4.**

4

20.     Costa Cruise Lines Inc. also goes by the name Costa Crociere S.p.A. and each share the same office. **Exhibit 5.**

21.     Carnival Corporation and Costa Cruise Lines also share inventory, such as freely transferring ships between fleets. **Exhibit 6.**

22.     Once the charter was secured, CruiseBuilder, Wes Cobos, Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines began a robust advertising campaign through the internet, social media, podcasts, radio, and paper brochures to ensure maximum exposure which ultimately led to a sold-out cruise.

23.     This advertisement campaign targeted all fifty states of the United States.

24.     The Cruise was billed as a fourteen-day, family-friendly trip through several historic locations like Venice, Athens, and Israel where passengers would receive political and religious commentary from like-minded influencers such as Glenn Beck, Bill O'Reilly, David Barton, and Rabbi Lapin.

25.     CruiseBuilder and its owners partnered with Glenn Beck and Blaze Media to nationally advertise the Cruise and create the buzz and excitement needed to sell out.

26.     Blaze Media is one of the largest independent media companies in the country comprised of TheBlaze.com, Blaze Radio, Blaze Podcasts, Blaze Media branded social media, and of course, Glenn Beck. Blaze Media is heard and seen in millions of households nationwide.

27.     Glenn Beck's radio show, The Glenn Beck Program, is also available nationwide and broadcasted through physical radio stations in: Texas, Minnesota, North Carolina, New Mexico, Pennsylvania, Michigan, Ohio, Georgia, Alabama, New York,

California, Louisiana, Oregon, Montana, Mississippi, Idaho, Virginia, Arizona, Missouri, Illinois, Wyoming, West Virginia, South Carolina, Kentucky, Colorado, Tennessee, Maryland, Iowa, Florida, Delaware, Oklahoma, Wisconsin, Arkansas, Indiana, New Jersey, Nebraska, Connecticut, Kansas, Nevada, Washington, New Hampshire, North Dakota, Utah, Massachusetts, Rhode Island, South Dakota, Alaska, Hawaii, and District of Columbia.

28.     Advertising the Cruise, Glenn Beck said:

"I want to give you the opportunity to share your values, your beliefs, and the things you hold dearly with the ones you love. . . . [Y]ou could have our first ever Cruise Thru History—you're invited. You are going to sail the Mediterranean on the incredible Costa Luminosa out of Venice Italy. . . . [W]e're going to begin in Milan or Venice and then sail on the Eastern Mediterranean visiting Croatia, Greece, and Israel. That is where you're gonna [sic] walk where Jesus walked, where the Prophets walked, in the Holy Land, guided every step of the way. [A]nd on the Sea, you'll be joined by me, myself, Stu, Rabbi Lapin, David Barton, and some others that may pop in. [O]f course, the amenities of the Costa Luminosa are yours as well along with the incredible Italian food constantly at your beck and call. But, indulging yourself is not what this is about. This is about sharing with those that you love the things that are most important. Bring your kids and your grandkids and we are going to show them the history of our religion, our faith, of freedom, of the republic. . . . [I]'d love to share this experience with you as we cruise through history together. I have my tickets. . . ."[1]

---

[1]    ComeSailAway    with    Glenn    Beck    Cruise    thru    History, https://www.youtube.com/watch?v=sGr0lg6vbCo&t=12s (last visited October 11, 2024); *see also* ComeSailAway with Glenn Beck Cruise thru History, https://www.facebook.com/watch/?v=2329060794004021 (last visited October 11, 2024).

29.    Blaze Media played advertisements and "live reads" for several months through its channels, including on shows featuring Glenn Beck, Pat Gray, Steve Deace, Jon Miller, Chad Prather, Allie Beth Stuckey, Lauren Chen, and Graham Allen.

30.    In addition to these live read advertisements through national channels, CruiseBuilder, Glenn Beck, and Blaze Media also placed advertisements on Facebook, **Exhibit 7**, and printed brochures. **Exhibit 8.** The Facebook advertisements reached at least forty-eight states and solicited ticket purchasers from each of them. The physical brochures also had a national reach and solicited ticket purchasers.

31.    For all the Glenn Beck and Blaze Media advertisements, Glenn Beck and Blaze Media were acting in their agency capacity for CruiseBuilder and its owners.[2] CruiseBuilder and Wes Cobos approved the advertisements.

32.    CruiseBuilder also sponsored podcasts on Vacation Radio on Spotify. Brian Mickelson appeared as an executive on CruiseBuilder's behalf and promoted "the upcoming Glenn Beck private charter 'Cruise Thru History!'"[3]

33.    Brian Mickelson is a former charter airline executive, and on or around August 14, 2014, the United States Department of Transportation ordered him, in his personal capacity, to cease and desist for a period of ten years from "engaging in air

---

[2] Documents evidencing this agency relationship may only be filed under seal after entry of a protective order.

[3] Cruising Italy, Croatia, Greece, Israel . . . with Glenn Beck!, https://open.spotify.com/episode/5GkLWtMqIneQT6cL86FQDC (last visited October 15, 2024).

transportation operations" due to his unfair and deceptive trade practices related to overcharging customers. **Exhibit 9.**

34.     Apparently, Glenn Beck and Brian Mickelson "have been doing things together"[4] for over ten years, even after Mr. Mickelson's sanctions. CruiseBuilder also appears to have hired Mr. Mickelson after his sanctions.

35.     Carnival Corporation and Costa Cruise Lines authorized CruiseBuilder, Glenn Beck, and Blaze Media to use certain advertisements. Costa Cruise Lines, and their ship, the Luminosa, were also included in the physical brochures sent to ticket purchasers.

36.     In all, the advertisement campaign successfully sold out the Cruise—over 2,000 tickets—and solicited purchasers from: Florida, California, North Carolina, Nevada, Ohio, Alaska, Utah, Texas, Arizona, Michigan, New Mexico, Idaho, Colorado, Washington, Oklahoma, Indiana, Georgia, Tennessee, Virginia, Pennsylvania, South Carolina, Arkansas, Delaware, Oregon, New York, Missouri, Illinois, Connecticut, Iowa, Minnesota, New Hampshire, Kansas, Wisconsin, Massachusetts, Maryland, New Jersey, Nebraska, Wyoming, Montana, West Virginia, Louisiana, North Dakota, Maine, Kentucky, Mississippi, and Alabama. **Exhibit 10.**

37.     Excited by the prospect of joining Glenn Beck and others on a luxury cruise, Plaintiff Chip Garritty purchased three tickets for the Cruise Thru History for himself and his family, totaling $25,615.00. **Exhibit 11.** Garritty bought these tickets after hearing

---

[4] *Id.*

about the Cruise on Beck's podcast, and/or one of his nationally syndicated radio programs, as part of the Cruise's national advertising campaign. Garritty purchased his tickets in June 2019. After purchasing his tickets, he was sent CruiseBuilder's Terms & Conditions. **Exhibit 12.**

38.    As part of these original Terms & Conditions, CruiseBuilder had the responsibility "to refund the amount received for the reservation" if a trip was canceled prior to departure. *Id.*, ¶ 20. In other words, if the Cruise was canceled, Garritty would be refunded $25,615.00 in cash. In fact, under these Terms & Conditions, every cruise purchaser was to receive a cash refund.

39.    In addition to the vigorous advertising campaign, CruiseBuilder, Wes Cobos, Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines were all responsible for planning the Cruise, canceling the Cruise, and ultimately, not refunding any of the ticket purchasers, as explained below.

40.    The Cruise was originally scheduled to depart on March 4, 2020, stopping at ports in Italy, Croatia, Israel, and Greece, before returning on April 7, 2020.

41.    Cabins on the Cruise started at $4,999.00 per person and went as high as $9,395.00 per person. Ticket purchasers were also given the option to purchase Glenn Beck's "Inner Circle" package, which provided Class members the opportunity to attend exclusive meet and greet events with Glenn Beck, along with admission to exclusive events onboard the Cruise, like a black-tie dinner with Glenn Beck. This "Inner Circle" cost each purchaser an additional $4,999.00. **Exhibit 13.**

42.     Glenn Beck's "Inner Circle" package sold out. The "Inner Circle" was limited to 136 guests, and at $4,999.00 per ticket, equals an additional $679,864.00 benefit. **Exhibit 14.** The "Inner Circle" would not have been connected to any third-party vendors and directly benefitted Glenn Beck and CruiseBuilder and its owners.

43.     Conservatively, Plaintiff and the Class paid at least $9,998,000.00 for the Cruise Thru History.[5] And thus, under the Terms & Conditions, Plaintiff and the Class were due at least $10 million in cash.

44.     Carnival Corporation and Costa Cruise Lines not only maintained control of the vessel, but also imposed certain restrictions, guidelines, and regulations on CruiseBuilder, Wes Cobos, and Glenn Beck and Blaze Media regarding advertising and operating its ship. For instance, CruiseBuilder made sure to include some of these restrictions in its Terms & Conditions. **Ex. 12, ¶ 37-38.**[6]

45.     For their participation in the Cruise, CruiseBuilder and its owners, along with Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines all received and retained monetary benefits for the Cruise Thru History which were not returned to Garritty or the Class.

46.     In February 2020, COVID-19 began making its way through Europe and the Middle East. On February 23, 2020, CruiseBuilder's President and owner, Wes Cobos, informed passengers that CruiseBuilder had a team "in Italy doing a full evaluation of

---

[5] 2,000 tickets multiplied by the base price of $4,499.00 equals $9,998,000.00.
[6] Further restrictions are known but cannot be disclosed without a protective order.

10

the situation, including gathering first-hand reports on where the safe zones are, what safety precautions are being implemented[,] and how those safety precautions are actually being carried out. They will remain on the ground in Italy for a few more days to continue to monitor the situation in person." **Exhibit 15.**

47.     At the same time, Wes Cobos was in Miami with Costa Cruise Line executives making final preparations for the Cruise. Both CruiseBuilder and Costa Cruise Lines were "making certain significant precautions . . . to protect our passengers in every way possible. The leadership at Costa has been extraordinarily cooperative and proactive in every way possible." *Id.*

48.     The next day, on February 24, Glenn Beck reached out to ticket purchasers informing them that he and his team were in "continuous contact with the executive team at CruiseBuilder . . . as well as the leadership at Costa[.] The length they are all going to, to ensure a safe, fun-filled trip for all of us, is nothing short of amazing." *Id.*

49.     Glenn Beck had the "utmost confidence" in CruiseBuilder, its executive team, and Costa Cruise Lines. *Id.*

50.     Unfortunately, on March 6, 2020, the Cruise Thru History was postponed. CruiseBuilder informed ticket purchasers it was "currently working closely with Costa Cruise Lines to reschedule the trip for some time in the coming months." **Exhibit 16.**

51.     On the same day, Glenn Beck posted a selfie video to YouTube updating ticket purchasers on the Cruise. "We are going to postpone and reschedule our trip . . . . I do want to thank CruiseBuilder they have been remarkable partners for us . . . ."[7]

52.     In the coming months, the Cruise Thru History remained in limbo. CruiseBuilder took care to tell ticket purchasers the trip was merely "postponed," rather than "canceled," because under the Terms & Conditions CruiseBuilder only needed to issue cash refunds if the trip was officially canceled.

53.     CruiseBuilder was also aware that all travel insurance policies sold through Travel Guard, a subsidiary of AIG, would only pay out if the Cruise was officially canceled and not merely postponed.

54.     On April 17, 2020, Wes Cobos sent an email to ticket purchasers informing them that "we do have a new ship confirmed and the official itinerary set. And we do have probable dates we are building around." But the trip was still <u>postponed</u>. Wes Cobos assured ticket purchasers "we are fully prepared to announce the dates when it's appropriate" and that "Glenn Beck shares this view wholeheartedly." **Exhibit 17.**

55.     While simultaneously misleading ticket purchasers about the status of the Cruise, CruiseBuilder unilaterally changed its Terms & Conditions. This was no good faith amendment.

56.     Notably, on June 5, 2020, CruiseBuilder altered the cash refund provisions on its own. Where before CruiseBuilder was obligated "to refund the amount received

---

[7] CruiseBuilder Update, https://www.youtube.com/watch?v=3WgNg7QmNA4 (last visited October 15, 2024).

for the reservation," **Ex. 12**, ¶ 20, now, CruiseBuilder's "only responsibility would be to refund any unused funds from the reservation payments and any amounts refunded back from other travel vendors used in connection with the vacation package less the initial deposit." **Ex. 18**, ¶ 20.

57.    CruiseBuilder did not give Garritty notice of the updated Terms & Conditions.

58.    The updated refund terms are so unfair to Garritty and the Class that no reasonable person in their position would have agreed to them. Hence, why CruiseBuilder secretly changed the terms. Garritty and the Class were not given a meaningful choice in accepting or denying the updated terms and the terms themselves are unduly unfair. Thus, the June 5, 2020 Terms & Conditions are unconscionable and unenforceable.

59.    In furtherance of gaslighting the ticket purchasers about the Cruise's status, on June 25, 2020, CruiseBuilder now said that the previously confirmed and official itinerary[8] was no longer happening and that "we are now focused on options to reschedule our cruise for spring 2021." **Exhibit 19.** CruiseBuilder assured everyone "[y]our chartered cruise is still secure." *Id.*

60.    Scott Knutson, on behalf of Costa Cruise Lines, said, "CruiseBuilder and Costa are working with the relevant authorities and ports to set a replacement date, and

---

[8] Per the April 17, 2020 email from Wes Cobos.

we anticipate making an announcement in the coming weeks relative to providing an identical package to the one guests originally purchased." **Exhibit 20.**

61.    In a phone call with BuzzFeed News, CruiseBuilder's president and owner Wes Cobos, along with CruiseBuilder's vice president of marketing Jason Burgess, said that "options would be provided to people" who can no longer join the Cruise and that "options would include a refund." *Id.* CruiseBuilder also said the future cruise would feature the same itinerary as the original. *Id.*

62.    Glenn Beck said, "anyone who wants a refund in these uncertain times should receive one, and I've strongly encouraged the cruise line, airlines, and the hotels to accommodate." *Id.*

63.    On July 10, 2020, CruiseBuilder told ticket purchasers "[e]xciting progress is being made and things are coming together nicely." **Exhibit 21.** CruiseBuilder further induced hope by claiming "to add a few special 'surprises' to our trip, too!" **Exhibit 22.**

64.    On July 14, 2020, CruiseBuilder "[a]long with Costa Cruises and Glenn Beck" announced new dates for the Cruise Thru History. *Id.* The Cruise was now set to sail on May 18, 2021. However, despite previous representations of refunds, CruiseBuilder now said that guests who could not make the trip would only be able to release their packages. *Id.*

65.    May 18, 2021 came and went and the Cruise Thru History did not happen.

66.    On July 29, 2021, CruiseBuilder sent an email to ticket purchasers that it has "been meeting with Glenn Beck's team, the other special hosts, Costa Cruises, and one of

the major airlines" to plan and arrange for another rescheduling to October 2021. **Exhibit 23.**

67.    On September 10, 2021, CruiseBuilder sent another email stating "[w]e're in constant contact with Costa Cruises and our travel partners[.]" **Exhibit 24.**

68.    And then, out of nowhere, on September 21, 2021, CruiseBuilder informed ticket purchasers it was "impossible to move forward with our planned 'Cruise Thru History with Glenn Beck.'" **Exhibit 25.** Finally, after eighteen months of postponements, the Cruise was officially canceled. However, CruiseBuilder reneged on their promised cash refunds, and only offered Plaintiff and the Class members either travel credits or an alternative trip. Indeed, neither option included refunding the tens of thousands of dollars Garritty and others spent on their tickets, nor did the options include an identical itinerary.

69.    To this day, not a single ticket purchaser for the Glenn Beck Cruise Thru History has received a full cash refund nor the benefit of their bargain.

70.    Considering everything, CruiseBuilder, Wes Cobos, Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines were all instrumental in planning the Cruise, postponing the Cruise, canceling the Cruise, and withholding from Plaintiff and the Class the monies they paid for the Cruise. Each of these individuals and entities pocketed and refused to return the Plaintiff's and Class members' property.

71.    Class members soon began asking for refunds. Emboldened by the new protections CruiseBuilder wrongfully afforded itself in the altered Terms & Conditions, it became typical for CruiseBuilder to respond to refund requests claiming all the third-

party vendors had been paid and never refunded CruiseBuilder, thus making it impossible to refund the ticket purchasers.

72.     This third-party vendor story, though, was a misleading excuse. Vendors, including Lufthansa Airlines, did issue refunds to CruiseBuilder. **Exhibit 26.**

73.     CruiseBuilder also received $435,000 in Paycheck Protection Program loans. **Exhibit 27.**

74.     CruiseBuilder did offer credits from Costa Cruise Lines toward different cruises; however, these trips would not include flights, hotels, Glenn Beck, or even the same ports as the Cruise Thru History. **Exhibit 28.** Obviously, this is in stark contrast to prior representations from CruiseBuilder that refunds would be an option and that the rescheduled Cruise would have the same itinerary.

75.     On October 27, 2021, Garritty emailed CruiseBuilder seeking a full refund. CruiseBuilder declined by relying on the boilerplate vendor excuse in direct contradiction to Garritty's Terms & Conditions. **Exhibit 29.**

76.     Garritty asked for a refund again in January 2022. CruiseBuilder again relied on its third-party vendor misrepresentation. **Exhibit 30.**

77.     On July 21, 2022, CruiseBuilder signed an assurance with the Division of Consumer Protection of the Department of Commerce of the State of Utah. The agency investigated CruiseBuilder for violations of the Utah Consumer Sales Practice Act, Utah Code § 13-11-1 *et seq.* As part of the settlement, CruiseBuilder agreed to offer future travel credits or a 19% refund to the Cruise Thru History ticket purchasers. **Exhibit 31.** These

options, of course, were inconsistent with previous representations made by CruiseBuilder.

78.     As if the bad news was not bad enough, CruiseBuilder then canceled the replacement trips it offered to Class members! One such instance happened to Garritty on February 23, 2023. **Exhibit 32.**

79.     On July 20, 2023, Garritty demanded mediation with CruiseBuilder and Wes Cobos. **Exhibit 33.** CruiseBuilder confirmed receipt of this letter. **Exhibit 34.** But CruiseBuilder and Cobos ignored this request.

80.     Conveniently, on August 25, 2023, CruiseBuilder filed for Chapter 11 bankruptcy. **Exhibit 35.** It identified 2,232 creditors, a.k.a, ticket purchasers, for the Cruise Thru History. **Exhibit 10.**

81.     However, on October 24, 2023, CruiseBuilder moved to voluntarily dismiss the bankruptcy action. **Exhibit 36.**

82.     In its motion to dismiss its bankruptcy, CruiseBuilder identified $1,523,995.90 in "cruise credits with Costa Cruise[.]" ***Id.*, ¶ 24(e).** This, obviously, is millions of dollars short of what the Class members paid for their tickets. These credits received by CruiseBuilder from Costa Cruise Lines were set to expire on November 30, 2023, which further revealed the mismanagement of even the credits.

83.     On November 13, 2023, U.S. Bankruptcy Judge Peggy Hunt granted CruiseBuilder's motion to dismiss its bankruptcy.

84.     Due to CruiseBuilder's delays and mismanagement, ticket purchasers were only afforded seventeen days to redeem the Costa credits offered to them. Obviously,

these credits were not close to matching the value Class members paid for the Cruise, were not cash refunds, and were not identical itineraries to the Cruise Thru History, as promised by CruiseBuilder.

85.    In all, CruiseBuilder, Wes Cobos, Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines all received and retained monetary benefits for the Cruise Thru History. They then postponed, postponed, and postponed the Cruise before finally canceling it. Upon cancelation, they informed ticket purchasers that refunds would not be available, despite prior representations and contract terms stating refunds would be made. After almost five years, thousands of ticket purchasers have not been fully reimbursed due to the bad and wrongful acts of Defendants.

## CLASS ALLEGATIONS

86.    Plaintiff and the Class incorporate the above paragraphs herein.

87.    Plaintiff brings this action under Federal Rule of Civil Procedure ("FRCP") 23 on behalf of himself and the following Class:

All persons who purchased tickets for the Glenn Beck Cruise Thru History scheduled for March 24, 2020, to April 7, 2020, including those who purchased "Insider Package" tickets, "VIP Package" tickets, and "Inner Circle Package" tickets.

Excluded from the Class are the following:

(a) Any class member that received a full refund for their reservation.

(b) Any of the named defendants, their directors, officers, employees, and/or agents.

(c) The judge presiding over this action and his/her immediate family members.

(d) Any person that timely and properly excludes himself/herself/itself pursuant to the orders of the Court.

**Numerosity under FRCP 23(a)(1)**

88.    "There is no magic number for proving numerosity, but courts have stated as few as forty class members is sufficient to show joinder is impracticable." *Harris v. D. Scott Carruthers & Assoc.*, 270 F.R.D. 446, 450 (D. Neb. 2010). Here, that number is easily satisfied. The Costa Luminosa had the capacity to hold 2,260 guests and the Cruise was sold out. Further, CruiseBuilder's bankruptcy filings indicate there were 2,232 Cruise purchaser creditors. Thus, the members of the Class are so numerous that joinder of all members is impracticable.

**Commonality under FRCP 23(a)(2)**

89.    There are questions of law and/or fact common to the Plaintiff and the Class, which predominate over questions that may affect individual Class members. The common and predominate question is whether Defendants were unjustly enriched by promoting and selling the tickets for the Cruise, accepting Class members' money for the

Cruise, misleading Class members on the Cruise's status, then canceling the Cruise and refusing to issue refunds.

**Typicality under FRCP 23(a)(3)**

90.    Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased tickets and packages for the Cruise, and the claims all arise from the same wrongdoing committed by Defendants.

**Fair and Adequate Representation under FRCP 23(a)(4)**

91.    Plaintiff will fairly and adequately represent the interests of the Class because Plaintiff's interests do not conflict with the interests of the other Class members he seeks to represent. Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the Class.

**Class Certification under FRCP 23(b)**

92.    The claims are certifiable under Federal Rule of Civil Procedure 23 because each of the elements of FRCP 23(a) are met, and the elements of FRCP 23(b) are also met.

93.    A class action is warranted for the fair and efficient adjudication of the controversy because, as detailed above, questions of law or fact common to class members predominate over any questions affecting only individual members and is superior to other available methods for fairly and efficiently adjudicating the controversy.

. . .

. . .

. . .

. . .

## CAUSES OF ACTION

### COUNT I
### Breach of Contract

94.     Plaintiff and the Class incorporate the above paragraphs herein.

95.     Plaintiff had a contract with CruiseBuilder and its owners for the purpose of providing the Glenn Beck Cruise Thru History.

96.     Plaintiff fulfilled his end of the contract by paying in full the $25,615.00 he owed to attend the Cruise Thru History.

97.     CruiseBuilder and its owners breached the contract by not performing their obligations in canceling the Cruise and not returning $25,615.00 to Plaintiff and millions of dollars to other Class members.

98.     Plaintiff and the Class were damaged because CruiseBuilder and its owners breached the contract.

99.     All contracts contain an implied promise that the parties will deal with each other fairly and in good faith.

100.    This means Defendants have promised Garritty and the Class not to intentionally do anything to injure their rights to receive the benefits of the contract. But CruiseBuilder and its owners did just that.

101.    CruiseBuilder and its owners' actions were inconsistent with the common purpose and justified expectations of Garritty and the Class in light of the contract language and the dealings between and conduct of the parties. By continually postponing the Cruise and misleading Garritty and the Class, then changing the Terms & Conditions

to CruiseBuilder's favor, then canceling the Cruise, then refusing to refund ticket purchasers, CruiseBuilder and its owners breached the implied covenant of good faith and fair dealing.

102.    The refashioned Terms & Conditions, updated on June 5, 2020, which secretly granted CruiseBuilder favorable refund language, are unconscionable and unenforceable.

103.    The new Terms & Conditions are so one-sided as to oppress and surprise the innocent party. Indeed, Plaintiff and the Class were never notified of the change. Further, the new Terms & Conditions result in an overall imbalance in the parties' obligations and rights that is inconsistent with accepted customs and business practices, e.g., Defendants contracted to refund Plaintiff and the Class so Defendants must refund Plaintiff and the Class.

104.    In addition, the June 5, 2020 Terms & Conditions are unconscionable because Plaintiff and the Class never had a reasonable opportunity to understand the terms and conditions, there was a lack of opportunity for meaningful negotiation, the terms were never explained to Plaintiff and the Class, Plaintiff and the Class never had a meaningful choice in accepting the new terms, and Defendants employed deceptive practices in hiding the new terms.

105.    Nor were the Terms & Conditions legally modified under either the common law or the Uniform Commercial Code; the June 5, 2020 Terms & Conditions were not supported by consideration, nor were they modified in good faith.

106.    Defendants cannot compel arbitration in this action.

107.    Wes Cobos, Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines are third party beneficiaries of the Terms & Conditions and likewise cannot compel arbitration in this action.

108.    The Terms & Conditions do not mandate arbitration but instead contain a voluntary and non-compulsory provision, which in pertinent part states, Plaintiffs "may pursue claims as explained in this section" **Ex. 12, ¶ 39 (emphasis added).**

109.    The Terms & Conditions provide, "[i]f we are unable to resolve your Claim within 60 days, you agree to attempt mediation, and if unsuccessful, you may seek relief through arbitration . . . ." *Id.* **(emphasis added).**

110.    Used in its plain and ordinary meaning, "[t]he word 'may' is an expression of possibility, a permissive choice to act or not, and ordinarily implies some degree of discretion. This contrasts with the word 'shall,' which is generally used to indicate a mandatory provision."[9]

111.    Plaintiff requested a refund on October 27, 2021. **Exhibit 29.** His claim was not resolved.

112.    Plaintiff again requested a refund on January 23, 2022. **Exhibit 30.** His claim again was not resolved.

113.    Plaintiff sent CruiseBuilder, Wes Cobos, Glenn Beck, and Carnival Corporation a mediation demand on July 20, 2023. **Exhibit 33.** CruiseBuilder confirmed receipt. **Exhibit 34.** Rather than attempt mediation, CruiseBuilder filed for bankruptcy.

---

[9] Legal Institute Information, https://www.law.cornell.edu/wex/may (last visited October 17, 2024).

Because CruiseBuilder, Wes Cobos, Glenn Beck, and Carnival Corporation all confirmed receipt of the mediation demand, and because they all ignored Plaintiffs' request to mediate their claims—the prerequisite to voluntary arbitration—they cannot now move to compel arbitration as a method of resolution.

114.    Consistent with the voluntary and non-compulsory nature of the arbitration provision, Plaintiffs attempted mediation. Because Defendants ignored this request, Plaintiffs have chosen to exercise their constitutional right to have their claims adjudicated in court. *See* U.S. Const. amend. VII.

115.    Defendants' decision to ignore Plaintiffs' mediation attempt also acts as a waiver of the right to arbitrate.

116.    Plaintiff and the Class are entitled to full refunds through compensatory damages, consequential damages, incidental damages, reliance damages, and restitutionary relief.

### COUNT II
### Violations of the Utah Consumer Sales Practice Act
### Utah Code § 13-11-1 *et seq.*

117.    Plaintiff and the Class incorporate the above paragraphs herein.

118.    Defendants committed unconscionable acts before, during, and/or after the transaction with Plaintiff and the Class by continually postponing the Cruise, unilaterally changing the Terms & Conditions, canceling the Cruise, withholding refunds from Plaintiff and the Class, and even canceling credit cruises.

119.    Defendants had an intent to deceive Plaintiff and the Class, evidenced by the secret change in the Terms & Conditions which granted themselves favorable refund language.

120.    Plaintiff and the Class are entitled to actual damages, ancillary relief, and reasonable attorneys' fees against Defendants.

## COUNT III
## Conversion

121.    Plaintiff and the Class incorporate the above paragraphs herein.

122.    Defendants willfully interfered with Plaintiffs property, i.e., the monies Plaintiffs paid to Defendants for the Cruise Thru History.

123.    Defendants did so without lawful justification as it was fraudulent behavior and in direct contradiction to the Terms & Conditions.

124.    When the Cruise was canceled, Plaintiff and the Class were immediately entitled to their property, but Defendants deprived Plaintiffs of the use and possession of their property.

125.    Plaintiff and the Class are entitled to the return of their property and punitive damages for this intentional tort.

## COUNT IV
## Fraud

126.    Plaintiff and the Class incorporate the above paragraphs herein.

127.    Defendants made numerous misleading statements/acts regarding the Cruise Thru History, including:

- Refusing to cancel the trip and only postponing it, claiming the trip was still "secure" and the reschedule will have the same, if not better, charter cruise experience;

- Secretly twisting the Terms & Conditions in their favor;

- Telling ticket purchasers that refunds would be an option and the rescheduled cruise would have the same itinerary;

- Claiming "exciting progress" is being made and "special surprises" were added to induce hope;

- Not offering refunds for the rescheduled Cruise, despite representing refunds would be available;

- Rescheduling the Cruise again, without refunds;

- Finally canceling the Cruise and not offering refunds;

- Falsely claiming third party vendors had not refunded them; and

- Canceling credit cruises which already did not have the same itinerary as the Cruise Thru History.

128.    Defendants made the statements knowing they were false, or, made the statements recklessly and without regard for the truth.

129.    Defendants made these statements in perpetration of its fraud and intended Plaintiff and the Class to rely on these statements so they would not request refunds and would continue to believe the Cruise was happening before it was too late.

130.    Plaintiff and the Class reasonably relied on Defendants' statements.

131.    Defendants had a duty to tell the truth about the matter, to make a fair disclosure, and to prevent a partial statement from being misleading or giving a false impression.

132.    Plaintiff and the Class suffered damages as a result of relying on the statements.

133.    Plaintiff and the Class are entitled to recover compensatory damages, reliance damages, expectancy damages, consequential damages, and punitive damages for Defendants' fraud.

## COUNT V
## Constructive Fraud

134.    Plaintiff and the Class incorporate the above paragraphs herein.

135.    Constructive fraud requires two elements: (1) a confidential relationship between the parties, and (2) a failure to disclose material facts. *See Jones & Trevor Marketing, Inc. v. Lowry*, 233 P.3d 538 (Utah Ct. App. 2010). "[A] fiduciary relationship and a confidential relationship are considered one and the same." *D'Elia v. Rice Development, Inc.*, 147 P.3d 515, ¶ 55 (Utah Ct. App. 2006).

136.    CruiseBuilder created a confidential relationship with Plaintiff and the Class as travel agents working on the behalf of Plaintiff and the Class. ***See e.g.,* Exhibit 16;** *see also Pellegrini v. Landmark Travel Group*, 628 N.Y.S.2d 1003, 1005 (Yonkers City Ct. 1995) ("The travel agent . . . is not a mere dispenser of tickets . . . his role is more analogous to that of a fiduciary in whom the client places his trust . . .") (internal citations omitted).

137.    Incorporating the above paragraphs, CruiseBuilder failed to disclose material facts regarding the Cruise Thru History. Instead of disclosing facts, CruiseBuilder opted to use vague language such as "exciting progress" and "postpone," rather than "cancel," to mislead Plaintiff and the Class. CruiseBuilder also explicitly

represented to Plaintiff and the Class that refunds would be an option, both in the Terms & Conditions and in interviews to the national media.

138.    Plaintiff and the Class are entitled to tort damages caused by the harm of Defendants' breach of fiduciary duty, restitutionary recovery, and other damages based on the substantive rules of law pled herein.

## COUNT VI
## Fraudulent Concealment

139.    Plaintiff and the Class incorporate the above paragraphs herein.

140.    Defendants had a duty to tell the truth about the matter, to make a fair disclosure, and to prevent a partial statement from being misleading or giving a false impression.

141.    Defendants knew it had changed the Terms & Conditions in its favor and failed to disclose it to Plaintiff and the Class.

142.    Plaintiff and the Class did not know the Terms & Conditions had been updated. Indeed, CruiseBuilder even told the Class refunds would be available after updating the Terms & Conditions.

143.    Defendants also knew it could delay the Cruise's official cancelation by repeatedly postponing it. The repeated postponements kept Plaintiff and the Class from receiving refunds under the Terms & Conditions. Defendants concealed the underlying facts of the Cruise's status from Plaintiff and the Class.

144.    Defendants' failure to disclose these material facts was a substantial factor in causing Plaintiff and the Class damages.

145.    Plaintiff and the Class are entitled to recover compensatory damages, reliance damages, expectancy damages, consequential damages, and punitive damages for Defendants' fraudulent concealment.

## COUNT VII
## Negligent Misrepresentation

146.    Plaintiff and the Class incorporate the above paragraphs herein.

147.    Defendants had a duty to tell the truth about the matter, to make a fair disclosure, and to prevent a partial statement from being misleading or giving a false impression.

148.    Defendants represented to Plaintiff and the Class that refunds would be offered, that progress was being made on the rescheduled Cruise, and that the rescheduled Cruise would have an identical itinerary.

149.    Defendants' representations of fact were not true.

150.    Defendants failed to use reasonable care to determine whether the representations were true.

151.    Defendants were in a better position than Plaintiffs to know the true facts.

152.    Defendants had a financial interest in misrepresenting Plaintiff and the Class.

153.    Plaintiff and the Class relied on the representations and it was reasonable for them to do so.

154.    Plaintiff and the Class suffered damages as a result of relying on the representations.

## COUNT VIII
## Unjust Enrichment

155.    Plaintiff and the Class incorporate the above paragraphs herein.

156.    Plaintiff and the Class conferred a benefit on Defendants by purchasing tickets for the Glenn Beck Cruise Thru History upon the promise that the Cruise would happen as advertised, or even happen at all.

157.    Defendants were aware of the benefit conferred.

158.    The Cruise did not happen as advertised, and further, replacement cruises were canceled as well.

159.    Defendants' retention of the benefit under such circumstances makes it inequitable for them to retain the benefit without payment of its value.

## COUNT IX
## Civil Conspiracy

160.    Plaintiff and the Class incorporate the above paragraphs herein.

161.    CruiseBuilder, Wes Cobos, Glenn Beck, Blaze Media, Carnival Corporation, and Costa Cruise Lines conspired to withhold refunds from Plaintiff and the Class.

162.    Plaintiff and the Class entrusted CruiseBuilder and Wes Cobos with their money. This included money paid for the Cruise and its special packages, including Glenn Beck's Inner Circle. CruiseBuilder retained part of this money, paid Glenn Beck and Blaze Media part of this money, and paid Carnival Corporation and Costa Cruise Lines part of this money.

163.    CruiseBuilder, Glenn Beck, and Costa Cruise Lines were in "constant contact" with each other, **Exhibit 24;** *see also* **Exhibit 23, Exhibit 16, Exhibit 37,** before

canceling the Cruise together on September 21, 2021 and withholding refunds from ticket purchasers.

164.    It was an unlawful, overt act to withhold refunds from Plaintiff and the Class because Defendants kept Plaintiffs from receiving the benefit of their bargain, Defendants changed the refund terms behind their back, and Defendants misled them regarding the status of the Cruise for months.

165.    Plaintiff and the Class suffered damages as a proximate result thereof.

## COUNT X
## Constructive Trust

166.    Plaintiff and the Class incorporate the above paragraphs herein.

167.    A constructive trust "arises by operation of law to prevent unjust enrichment." *Ashton v. Ashton*, 733 P.2d 147, 150 (Utah 1987).

168.    Defendants, through participation in active and/or egregious misconduct wrongfully withheld refunds from Plaintiff and the Class.

169.    Defendants were unjustly enriched by Plaintiff and the Class and Plaintiffs' withheld property can be traced to Defendants' wrongful behavior.

170.    Injustice would result if Defendants were able to keep the money that rightfully belongs to Plaintiff and the Class.

## **TRIAL BY JURY**

171.    Plaintiff and the Class request a trial by a jury of their peers. U.S. Const. amend. VII.

## **PRAYER FOR RELIEF**

172.    WHEREFORE, Plaintiff and the Class pray the Court enters judgment in their favor on all the claims asserted herein, to Order all the requested relief pled above, and to provide Plaintiff and the Class all other just and appropriate relief, including attorneys' fees and costs.

DATED: 4th of November, 2024          Respectfully submitted,

**MOXIE LAW GROUP**

_____
Kara H. North
Attorney for Plaintiffs

_Pending Pro Hac Admission:_

**POYNTER LAW GROUP, PLLC**

Scott Poynter, AR Bar 90077
scott@poynterlawgroup.com
Daniel Holland, AR Bar 2019237
daniel@poynterlawgroup.com
Clay Ellis, AR Bar 2023183
clay@poynterlawgroup.com
4924 Kavanaugh Blvd.
Little Rock, AR 72207
(501) 812-3943

_Attorneys for Plaintiff_