IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| ADRIAN "CHIP" GARRITTY, on behalf of himself and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>PROJECT NEPTUNE, LLC, d/b/a CRUISEBUILDER, VACATIONBUILDER, LATTER DAY TRAVEL, and JUNGLE REEF; WES COBOS, an individual,<br><br>Defendants. | MEMORANDUM AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND ORDER TO SHOW CAUSE<br><br>Case No. 2:24-cv-00829-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Ceclia M. Romero |

Now before the court is Defendant Project Neptune, LLC and Defendant Web Cobos' Motion to Dismiss.[1]  For the reasons set forth below, the court GRANTS IN PART Defendant's Motion insofar as this court lacks subject matter jurisdiction to adjudicate Garritty's class-wide claims under the Class Action Fairness Act of 2005 (CAFA) and ORDERS Garritty to demonstrate why his individual claims should not be dismissed for lack of subject matter jurisdiction.

FACTUAL BACKGROUND[2]

In 2019 Project Neptune, LLC (Project Neptune) d/b/a CruiseBuilder partnered with Glenn Beck, Blaze Media, LLC, "Carnival Corporation & plc," and Costa Cruise Lines Inc. to

---

[1] Dkt. 42, *Defendants' Motion to Dismiss* (*Motion*).

[2] The following facts are set forth as alleged in the Complaint and the parties briefing, including the attached exhibits, with any factual disputes resolved in Plaintiffs' favor.  *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010) ("Without discovery and a record on jurisdiction, this court must resolve all factual disputes in the plaintiff's favor.  Where the plaintiff's factual allegations are not directly controverted, they are taken as true for purposes of determining jurisdiction.") (cleaned up).

offer a "Glenn Beck Cruise Thru History" (the Cruise).[3] CruiseBuilder contracted with Costa Cruise Lines (CCL) and scheduled the Cruise to depart on March 24, 2020.[4] Defendants nationally advertised the Cruise as a "fourteen-day, family-friendly trip through several historic locations like Venice, Athens, and Israel where passengers would receive political and religious commentary from like-minded influencers such as Glenn Beck, Bill O'Reilly, David Barton, and Rabbi Lapin."[5]

The Cruise had capacity for over 2,000 passengers and sold out.[6] The per-person cost of the cruise ranged between $4,999.00 and $9,395.00.[7] Defendants also sold out 136 "Inner Circle" packages for an additional $4,999.00 per-person that included admission to exclusive events with Glenn Beck.[8] In June 2019, Plaintiff Adrian "Chip" Garritty purchased three tickets for the Cruise for $25,615.00.[9]

On February 12, 2020, CruiseBuilder sent a confirmation email to Garritty detailing the payment schedule, warning the "itinerary [could] change due to unforeseen circumstances," and recommending travel insurance.[10] The notice detailed Garritty's charges and also attached a document CruiseBuilder styled as a "Contract Terms and Conditions."[11] The Contract listed a last-updated date of September 30, 2019.[12]

---

[3] Dkt. 1, *Complaint*, ¶ 15.

[4] *Id*. at ¶¶ 15–16.

[5] *Id.* ¶¶ 23–24.

[6] *Id.* ¶ 36.

[7] *Id.* ¶ 41.

[8] *Id.* ¶¶ 41–42.

[9] *Id.* ¶ 37; Dkt. 1-3, Ex. 11, *Cruise Confirmation Email* (*Confirmation Email*).

[10] *Confirmation Email*.

[11] *Confirmation Email*; Dkt. 1-3, Ex. 12, *Contract Terms and Conditions* (*Contract*).

[12] *Contract.*

The Contract stated "[i]f a vacation is cancelled prior to departure, CruiseBuilder's only responsibility will be to refund the amount received for the reservation."[13] CruiseBuilder also warned it would "try to rebook the same vacation with a different departure date, or a similar vacation, but there [was] no guarantee of availability of offering [sic]."[14] The Contract also included the following dispute resolution clause:

> CruiseBuilder.com is committed to customer satisfaction, so if you have a problem or dispute, we will try to resolve your concerns. But if we are unsuccessful, you may pursue claims as explained in this section. You agree to give us an opportunity to resolve any disputes or claims relating in any way to . . . any services or products [or] any representations made by us . . . by contacting CruiseBuilder.com Customer Support. If we are not able to resolve your Claims within 60 days, you agree to attempt mediation, and if unsuccessful, you may seek relief through arbitration or in small claims court, as set forth below. Any and all Claims will be resolved by binding arbitration, rather than in court, except you may assert Claims on an individual basis in small claims court if they qualify. . . . [A]n arbitrator can award on an individual basis the same damages and relief as a court (including statutory damages, attorneys' fees and costs) and must follow and enforce these Terms and Conditions as a court would. . . . Any and all proceedings to resolve Claims will be conducted only on an individual basis and not in a class, consolidated or representative action. The Federal Arbitration Act and federal arbitration law apply to this agreement.[15]

Garritty declined to purchase insurance with his reservation.[16]

In February 2020, COVID-19 rapidly spread throughout Europe and the Middle East.[17] On February 23, 2020, Defendants informed passengers they were evaluating the situation in Italy, including what safety precautions were being implemented.[18] On February 24, 2020,

---

[13] *Contract* ¶ 20.

[14] *Id.*

[15] *Contract* ¶ 39.

[16] *Confirmation Email*.

[17] *Complaint* ¶ 46.

[18] *Id.*

Glenn Beck told ticket holders he had the "utmost confidence" in CruiseBuilder and commented on the "amazing" efforts being made to "ensure a safe, fun-filled trip."[19]

On March 6, 2020, Defendants informed passengers they were postponing the Cruise and working with CCL "to reschedule the trip for some time in the coming months."[20] On April 17, 2020, Defendants emailed passengers informing them the cruise was still postponed, but a new ship had been chartered and an official itinerary was set with "probable dates" that would be announced when it was "appropriate."[21] On June 5, 2020, Defendants updated its Contract to state that "[i]f a vacation is cancelled by CruiseBuilder prior to departure, CruiseBuilder's only responsibility will be to refund any unused funds from the reservation payments and any amounts refunded back from other travel vendors used in connection with the vacation package less the initial deposit."[22] CruiseBuilder did not give Garritty notice of the update.[23]

On June 25, 2020, Defendants notified Garritty the previously-issued itinerary was canceled, but assured him the "chartered cruise [was] still secure," and they were looking at options to reschedule for Spring 2021.[24] A few weeks later, Defendants announced the new departure date would be May 18, 2021.[25] However, Defendants later rescheduled the Cruise again to depart in October 2021.[26] Then, on September 21, 2021, Defendants officially canceled the Cruise and offered Garritty two options—travel credits or an alternative trip.[27]

---

[19] *Id.* ¶¶ 48–49.

[20] *Id.* ¶ 50.

[21] *Id.* ¶ 54.

[22] *Id.* ¶ 56; Dkt. 1-3, Ex. 18 (*6/5/2020 Contract Terms & Conditions*) ¶ 20.

[23] *Complaint* ¶ 57.

[24] *Id.* ¶ 59.

[25] *Id.* ¶ 64.

[26] *Id.* at ¶ 66.

[27] *Id.* ¶ 68.

On October 27, 2021, Garritty emailed Defendants and requested a full refund.[28] In response, Defendants stated they were unable to offer refunds because they did not receive cash refunds from their third-party vendors.[29] In January 2022, Garritty sent another refund request,[30] and Defendants again responded that they were unable to provide a refund because they had not received refunds from their vendors and referred Garritty to the "options that were sent out previously."[31]

Garritty was not the only potential passenger who sought, and was denied, a refund.[32] The Division of Consumer Protection of the Department of Commerce of the State of Utah (Division) "received numerous complaints from consumers who purchased [the Cruise]."[33] After investigating, the Division determined Defendants recovered 19% of the total cost paid by consumers and had "preserved those funds for consumer refunds."[34] On July 26, 2022, Cobos signed an Assurance of Voluntary Compliance on behalf of CruiseBuilder, stating that "approximately 39% of the Cruise customers have not selected one of the options offered in CruiseBuilder's September 21, 2021, email," and agreed to offer the "unresolved consumers" either an award of future travel credits equal to 100% of the value the consumer paid for the Cruise, or a refund equal to 19% of the amount paid.[35] CruiseBuilder agreed to keep the offer

---

[28] *Id.* ¶ 75.

[29] *Id.* ¶ 75; Dkt. 1-3, Exhibit 29 (email from CruiseBuilder stating, "Unfortunately, the travel vendors, including the cruise line, have only offered credits. We would not be able to provide a refund. However you have two alternative options equal to the amount you paid for the Glenn Beck cruise but it would have to be through one of the other options.").

[30] *Complaint* ¶ 76; Dkt. 1-3, Exhibit 30.

[31] *Complaint*, Dkt. 1-3, Exhibit 30.

[32] *Complaint* ¶¶ 69–71; Dkt. 1-3, Exhibit 31, *Assurance of Voluntary Compliance* (*Assurance*) ¶ 3(b).

[33] *Assurance* ¶ 3(b).

[34] *Complaint* ¶ 77; *Assurance* ¶ 3(n)–(p).

[35] *Complaint* ¶ 77; *Assurance* ¶ 3(k), 4(a)–(c).

open for sixty days but then warned it would not be "obligated to make the Offer available to any Unresolved Consumer" that had received notice.[36] Further, CruiseBuilder made any acceptance of the offer contingent on entering into a settlement agreement to release any claims against Defendants related to the Cruise.[37]

On February 23, 2023, Defendants emailed Garritty and stated it had cancelled his scheduled cruise and hoped to "find a way" Garritty could use his travel credits in the future.[38] On July 20, 2023, Garritty made a "formal request for mediation" by sending a letter through counsel.[39] The letter stated, "If we do not receive a response to this request within 15 days of this letter, we will consider the request declined and seek redress in court."[40] Defendants confirmed receipt of the letter but did not otherwise respond.[41]

On November 5, 2024, Garritty filed a complaint under CAFA asserting ten claims: (1) breach of contract; (2) violations of the Utah Consumer Sales Practice Act; (3) conversion; (4) fraud; (5) constructive fraud; (6) fraudulent concealment; (7) negligent misrepresentation; (8) unjust enrichment; (9) civil conspiracy; and (10) constructive trust.[42] Garritty alleges the putative class members "paid at least $9,998,000" for the Cruise.[43] On February 21, 2025,

---

[36] *Assurance* ¶ 4(d). CruiseBuilder agreed to notify unresolved consumers of the offer via email, mail, and four telephone calls. If CruiseBuilder did not receive a response from these initial attempts, it would send follow-up emails and certify compliance. *Id.* ¶ 4(e)–(f).

[37] *Id.* ¶ 4(a).

[38] *Complaint* ¶ 78; Dkt. 1-3, Exhibit 32. It is unclear whether Garritty had accepted Defendants' offer to receive travel credits and had scheduled a different cruise, or if CruiseBuilder had given him travel credits by default because he had not resolved his complaint per the Assurance.

[39] *Complaint* ¶ 79; *Id.*, Dkt. 1-3, Exhibit 33, *July 20, 2023 Demand Letter*.

[40] Dkt. 1-3 at 110.

[41] *Complaint* ¶ 79.

[42] *Id.* ¶¶ 94–170.

[43] *Id.* ¶ 37, 43. The Complaint states Garritty calculated this number by multiplying the base price of $4,499 by 2,000 tickets. *Id.* ¶ 43, n.5.

Defendants filed the instant Motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.[44] Specifically, Defendants contend the court lacks jurisdiction because: (1) the Contract precludes Plaintiff from bringing a class action suit;[45] and (2) Garritty fails to satisfy the amount-in-controversy threshold for his individual claims.[46] The Motion is fully briefed.[47]

## LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, and the presumption is that they lack jurisdiction unless and until a plaintiff pleads sufficient facts to establish it."[48] Moreover, district courts have an independent obligation to address their own subject-matter jurisdiction and can dismiss actions *sua sponte* for a lack of subject-matter jurisdiction.[49]

Under 28 U.S.C. § 1332(a), federal courts may sit in diversity jurisdiction only if there is complete diversity between adverse parties and the amount in controversy between them exceeds $75,000. However, under CAFA, federal courts may sit in diversity over class action lawsuits involving at least 100 members so long as the total amount in controversy exceeds the sum of value of $5,000,000.00 and any member of a class of plaintiffs is a citizen of a State different from any defendant.[50]

With respect to the amount-in-controversy requirement, a plaintiff must allege sufficient facts "to convince the district court that recoverable damages bear a reasonable relation to the

---

[44] *See generally*, *Motion*.

[45] *Motion* at 9–11.

[46] *Reply* at 5–8.

[47] Dkt. 43, *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss* (*Opposition*); Dkt. 48, *Defendants' Reply in Support of Their Motion to Dismiss* (*Reply*).

[48] *Celli v. Shoell*, 40 F.3d 324, 327 (10th Cir. 1994) (citations omitted).

[49] *City of Albuquerque v. Soto Enters., Inc.*, 864 F.3d 1089 (10th Cir. 2017).

[50] 28 U.S.C. § 1332(d)(2).

minimum jurisdictional floor."[51] Federal courts determine "the amount in controversy . . . from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed in good faith."[52] A court may dismiss a complaint for failing to meet the amount-in-controversy requirement only if it is a "legal certainty" the party cannot meet the jurisdictional threshold.[53]

## ANALYSIS

Garritty alleges the court has jurisdiction under CAFA because "there are over 100 class members and the amount in controversy exceeds $5,000,000.00"[54] Alternatively, Garritty asserts he has "plain-old diversity jurisdiction" because, "[e]ven if the Complaint alleges economic damages of only $25,615.00, the amount-in-controversy may still exceed $75,000.00 when there are multiple types of damages claimed, including attorneys' fees."[55] Defendants argue the Contract's dispute resolution clause precludes Garritty from bringing a class action and he has not alleged sufficient damages for his own claims to meet the matter-in-controversy requirement. The court concludes Garrity has failed to establish subject matter jurisdiction under CAFA or 28 U.S.C. § 1332(a) for independent reasons.

### I. Jurisdiction Under CAFA

Defendants maintain the dispute resolution clause of the Contract prohibits any class actions. Garritty argues it is not appropriate for the court to determine "the merit of CruiseBuilder's class waiver" at the initial pleading stage; rather, "the only threshold question

---

[51] *Adams v. Reliance Standard Life Ins. Co.*, 225 F.3d 1179, 1183 (10th Cir. 2000).

[52] *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353 (1961) (cleaned up).

[53] *Id.* (cleaned up).

[54] *Complaint* ¶ 5.

[55] *Opposition* at 8 (citing *Interstate Med. Licensure Compact Comm'n v. Bowling*, 113 F.4th 1266, 1274 (10th Cir. 2024)); *Complaint* ¶ 5.

the Court must consider is whether the face of the complaint properly alleges subject matter jurisdiction."[56] The court concludes it need not determine the enforceability of the dispute resolution clause because Garritty fails to satisfy the amount-in-controversy requirement under CAFA. Garritty alleges the class damages are "at least $9,998,00.00."[57] The Complaint explains this amount was calculated by multiplying the number of tickets (2,000) by the per-person Cruise base price of $4,999.00.[58] But Garritty's Complaint relies on an exhibit stating that, by July 26, 2022, 61% of Cruise customers had resolved their claims with CruiseBuilder.[59] Even assuming no additional customers resolved their claims before Garritty filed his Complaint in November 2024, the aggregate amount in controversy would be only $3,899,220.00.[60] Because a class action requires an amount in controversy over $5,000,000,[61] the court concludes Garritty cannot satisfy the jurisdictional requirements under CAFA.

## II.  Jurisdiction Under 28 U.S.C. § 1332(a)

Defendants also contend the court lacks subject matter jurisdiction to adjudicate Garritty's individual claims because he alleged only $25,615.00 in damages, well short of the $75,000 minimum requirement to establish diversity jurisdiction under § 1332(a).[62] Additionally, Defendants argue Garritty cannot meet the amount-in-controversy requirement

---

[56] *Opposition* at 7–8.

[57] *Complaint* ¶ 43.

[58] *Id.* ¶ 45, n.5.

[59] *Complaint* ¶ 77; *Assurance* ¶ 3(i).

[60] The product of 39% of the 2,000 Cruise customers (780) and $4,999.00. *See Complaint* ¶ 43 n.5 (explaining Garritty's calculation of damages). Even assuming all 136 passengers who purchased the "Inner Circle" packages remain in the prospective class, that adds at most an additional $679,864.00 (136 x $4,999.00), bringing the total class recovery to at most $4,579,084.00, well below the CAFA jurisdictional threshold.

[61] 28 U.S.C. § 1332(d)(2).

[62] *Reply* at 5.

because the Contract caps individual damages to the amount paid for the reservation—which in his case was $25,615.00 [63]

Garritty argues that, even though he asserts only $25,615.00 in actual damages, the Complaint clears the $75,000.00 threshold because it "alleges ten causes of action, each with their own damages and relief such as compensatory, consequential, incidental, reliance, restitutionary, actual, ancillary, punitive, and expectancy."[64]

The court agrees that a suit alleging actual damages below $75,000.00 may still satisfy the statutory requirement. A claimant is only required to allege sufficient facts demonstrating the claimed damages bear "a reasonable relation to the minimum jurisdictional floor."[65] And although the Contract imposes a liability ceiling for *breach of contract* tied to the amount paid for the reservation, Garritty also alleges additional claims implicating punitive damages and attorneys' fees.[66] But the court need not decide whether Garritty's individual claims together exceed the $75,000 jurisdictional requirement at this juncture because the Complaint fails to allege complete diversity.

A complaint asserting federal jurisdiction under § 1332(a) must adequately allege facts establishing both prongs of federal jurisdiction—the amount in controversy and diversity.[67]

---

[63] *Reply* at 2 (citing the Contract: "If a vacation is canceled prior to departure, CruiseBuilder's only responsibility will be to refund the amount received for the reservation."); *see also Confirmation Email*.

[64] *Opposition* at 8–9.

[65] *Adams*, 225 F.3d at 1183.

[66] *See e.g.*, *Complaint* ¶¶ 117–120 (seeking attorneys' fees for violations of the Utah Consumer Sales Practice Act); *id.* ¶¶ 121–125 (seeking punitive damages for conversion); *id.* ¶¶ 126–133 (seeking punitive damages for fraud); *id.* ¶¶ 134–138 (seeking tort damages and restitution for constructive fraud); *id.* ¶¶ 139–145 (seeking punitive damages for fraudulent concealment).

[67] 28 U.S.C. § 1332(a); *see also Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) ("[T]he determination of jurisdiction is based only on the allegations in the plaintiff's well-pleaded complaint. . . . That longstanding rule makes the complaint—the plaintiff's own claims and allegations—the key to 'arising under' jurisdiction.") (cleaned up). *See also McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936) ("[T]he party who seeks the exercise of jurisdiction in his favor . . . must allege in his pleading the facts essential to show jurisdiction.").

Outside of CAFA, the complaint must demonstrate *complete* diversity—"*no* plaintiff may be a citizen of the same state as *any* defendant."[68] Thus, for Garritty's individual claims, he must demonstrate complete diversity between himself and every Defendant. Garritty is a citizen of Arkansas.[69] Cobos is a citizen of Utah.[70] But the court is unable to determine the citizenship of CruiseBuilder. Unincorporated entities, including limited liability companies like CruiseBuilder, are deemed citizens of every state in which its members are citizens.[71]

Here, the Complaint does not contain sufficient allegations establishing CruiseBuilder's citizenship as an unincorporated company. The Complaint alleges CruiseBuilder "is a Utah citizen"[72] and "[i]ts registered agent for service of process is Anderson Hinkins LLC"[73] located in South Jordan, Utah.[74] But because CruiseBuilder is an unincorporated entity, the Complaint must identify all of its members and allege their citizenship. The Complaint fails to do so. It is unclear whether Anderson Hinkins LLC is a member of CruiseBuilder and, if it is, its citizenship "must be traced through however many layers of partners or members there may be."[75] The same would be true of any other LLCs that are CruiseBuilder members. Accordingly, Garritty fails to establish this court's jurisdiction under § 1332(a).

---

[68] *Grynberg v. Kinder Morgan Energy Partners, L.P.*, 805 F.3d 901, 905 (10th Cir. 2015) (emphasis added); *compare* 28 U.S.C. § 1332(d)(2)(A) (stating district courts have jurisdiction for class actions where the amount in controversy exceeds $5,000,000.00 and in which *any* member of the putative class is diverse from any defendant).

[69] *Complaint* ¶ 2; *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir. 1974) (stating that "citizenship means domicile," and that "a person's domicile is the place of his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom. . . .").

[70] *Complaint* ¶ 4.

[71] *See Americold Realty Trust v. Conagra Foods, Inc.*, 577 U.S. 378, 383 (2016) ("So long as an entity is unincorporated, we apply our oft-repeated rule that it possesses the citizenship of all its members.") (cleaned up).

[72] *Complaint.* ¶ 3.

[73] *Id.*

[74] *Id.*

[75] *Magnitude Mgmt., LLC v. Tilala*, No. 1:24-cv-00162-DBB, 2024 WL 4603724, at *1 (quoting *Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 n.16 (3d Cir. 2015)).

## CONCLUSION

The Complaint fails to establish jurisdiction under CAFA and inadequately pleads diversity for Garritty's individual claims. The court GRANTS IN PART Defendants' Motion,[76] dismisses all class-related claims and relief, and ORDERS Garritty to show cause why his individual claims satisfy the complete diversity requirement in 28 U.S.C. § 1332(a) within fourteen (14) days of this Order.

SO ORDERED this 18th day of August 2025.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[76] Dkt. 42.